**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL A. BERNSTEIN IRA, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PROGENICS PHARMACEUTICALS, INC., KAREN JEAN FERRANTE, BRADLEY L. CAMPBELL, ERIC J. ENDE, DAVID W. MIMS, ANN L. MACDOUGALL, GÉRARD BER, HEINZ MÄUSLI, LANTHEUS HOLDINGS, INC., and PLATO MERGER SUB, INC.<br><br>Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br>CLASS ACTION |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Michael A. Bernstein IRA ("Plaintiff" or the "IRA"), by its undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on October 2, 2019 (the "Proposed Transaction"), pursuant to which Progenics Pharmaceuticals, Inc. ("Progenics" or the "Company") will be acquired by Lantheus Holdings, Inc. ("Parent") and Plato Merger Sub, Inc. ("Merger Sub," and together with Parent, "Lantheus").

2. On October 1, 2019, Progenics' Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Lantheus. Pursuant to the terms of the Merger Agreement, Progenics' stockholders will receive 0.2502 shares of Parent common stock for each share of Progenics

common stock they own ("Merger Consideration"). (collectively, the "Merger Transaction").

3. Pursuant to the terms of the Merger Agreement, Progenics' stockholders will receive Progenics shares which reached a high of $5.75 per share. Progenics' shares had recently been as low as $3.54 on August 19, 2019. Parent shares on that day closed at $19.43 on October 3, 2019.

4. On November 12, 2019, the Board caused the Company to file a Form S-4 Registration Statement (the "Registration Statement"), which also contained Progenics' and Lantheus' Preliminary Joint Proxy/Prospectus, with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

5. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Progenics common stock as set forth in the attached Certification.

10. Defendant Progenics is a Delaware corporation and maintains its principal executive offices at One World Trade Center, 47th Floor, New York, NY 10007. Progenics' common stock is traded on the NASDAQ Global Select Market under the ticker symbol "PGNX. Defendant Karen Jean Ferrante is Chairman of the Board of the Company.

11. Defendant Bradley L. Campbell is a director of the Company.

12. Defendant Eric J. Ende was appointed to the Board on November 8, 2019.

13. Defendant David W. Mims was appointed as interim Chief Executive Officer of Progenics on November 15, 2019 and has been a director of Progenics since November 2019.

14. Defendant Karen Jean Ferrante currently Chairman of the Board has been a director of Progenics since January 2014.

15. Defendant Ann L. MacDougall was appointed to the Board on November 8, 2019 and as interim Chair of the Board on November 15, 2019.

16. Defendant Gérard Ber was appointed to the Board on November 8, 2019.

17. Defendant Heinz Mäusli was appointed to the Board on November 8, 2019.

18. The defendants identified in paragraphs 11 through 17 are collectively referred to herein as the "Individual Defendants". The Individual Defendants and Defendant Progenics are collectively referred to herein as the "Defendants".

19. Non-party Peter J. Crowley resigned from the Board effective October 17, 2019.

20. Non-party Michael D. Kishbauch resigned from the Board effective October 17, 2019.

21. Non-party David A. Scheinberg was removed from the Board on November 8, 2019.

22. Non-party Nicole S. Williams was removed from the Board on November 8, 2019.

23. Non-party Mark R. Baker resigned from the Board and from his position as Progenics' Chief Executive Officer effective November 8, 2019.

24. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

25. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action on behalf of itself and the other public stockholders of Progenics (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

27. This action is properly maintainable as a class action.

28. The Class is so numerous that joinder of all members is impracticable. As of the filing of the Registration Statement, there were approximately 86,421,634 shares of Progenics common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

29. Questions of law and fact are common to the Class, including, among others, whether Defendants will irreparably harm plaintiff and the other members of the Class if Defendants' conduct complained of herein continues.

30. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately

protect the interests of the Class.

31. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

32. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

33. Progenics is an oncology company focused on the development and commercialization of innovative targeted medicines and artificial intelligence to find, fight, and follow cancer, including: therapeutic agents designed to treat cancer (AZEDRA®, 1095, and PSMA TTC); prostate-specific membrane antigen ("PSMA") targeted imaging agents for prostate cancer (PyL™ and 1404); and imaging analysis technology (aBSI and PSMA AI).

34. The Company has commercial products AZEDRA, for the treatment of patients with unresectable, locally advanced, or metastatic pheochromocytoma or paraganglioma who require systemic anticancer therapy, and oral and subcutaneous formulations of RELISTOR® (methylnaltrexone bromide) for the treatment of opioid-induced constipation, which is partnered with Bausch Health Companies Inc.

35. AZDERA, approved in July 2018, is the first and only United States Food and Drug Administration ("FDA") approved product used to treat adult and pediatric patients twelve years and older for the ultra-orphan indications of pheochromocytoma and paraganglioma.

12

36. On October 1, 2019, the Board caused the Company to enter into the Merger Agreement with Lantheus.

37. Pursuant to the terms of the Merger Agreement, Progenics stockholders will receive 0.2502 shares of Parent common stock for each share of Progenics common stock they own.

38. Following the consummation of the Proposed Transaction, Lantheus stockholders will own approximately 65% of the outstanding shares of common stock of the combined company, while Progenics stockholders will own only approximately 35%.

39. According to the press release announcing the Proposed Transaction:

Lantheus Holdings, Inc. (NASDAQ: LNTH) ("Lantheus"), parent company of Lantheus Medical Imaging, Inc. ("LMI"), a leader in the development, manufacture and commercialization of innovative diagnostic imaging agents and products, and Progenics Pharmaceuticals, Inc. (NASDAQ: PGNX) ("Progenics"), an oncology company developing innovative medicines and artificial intelligence to find, fight and follow cancer, today announced a definitive agreement for Lantheus to acquire Progenics in an all-stock transaction. The transaction has been unanimously approved by the Boards of Directors of both companies.

Under the terms of the agreement, Lantheus Holdings will acquire all of the issued and outstanding common shares of Progenics stock at a fixed exchange ratio. Progenics shareholders will receive 0.2502 shares of Lantheus Holdings stock for each share of Progenics stock, representing approximately a 35% aggregate ownership stake in the combined company. The exchange ratio implies a 21.5% premium to Progenics' 30-day volume weighted average closing stock price ("VWAP"). . . .

Additional Transaction Details

The transaction is expected to close in the first quarter of 2020, subject to approval by Lantheus and Progenics stockholders, regulatory approvals, and customary closing conditions.

Advisors

SVB Leerink LLC is acting as financial advisor and White & Case LLP is acting as legal counsel to Lantheus. Jefferies LLC is acting as financial advisor to Progenics and O'Melveny & Myers LLP is acting as its legal counsel.

***The Registration Statement Omits Material Information***

12

40. Defendants filed the Registration Statement with the SEC on or about November 12, 2019 in connection with the Proposed Transaction.

41. On October 1, 2019, Progenics' Board caused the Company to enter into the Merger Agreement with Lantheus.

42. Progenics is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the S-4, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

43. In addition, the Progenics' Board agreed to the Merger in large part to protect their financial positions out of fear of being replaced by a new slate of directors proposed by Velan Capital, L.P.

44. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

45. First, the Registration Statement omits material information regarding the Company's and Lantheus' financial projections.

46. With respect to the Company's financial projections, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) gross profit, (b) EBIT, (c) free cash flow, and (d) unlevered free cash flow; (ii) the adjustments to total adjusted net revenue; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

47. With respect to Lantheus' financial projections, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) gross profit, (b) EBIT,

(c) free cash flow, (d) adjusted EBITDA, and (e) unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

48. With respect to the combined company's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

49. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

50. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor, Jefferies LLC ("Jefferies") in connection with the Proposed Transaction.

51. With respect to Jefferies' Discounted Cash Flow Analysis ("DCF") of Progenics, the Registration Statement fails to disclose: (i) the standalone unlevered, after-tax free cash flows that Progenics was forecasted to generate during the calendar years ending December 31, 2020 through December 31, 2033 and all underlying line items; (ii) the terminal values of Progenics; (iii) the individual inputs and assumptions underlying the discount rate range of 11.5% to 12.5% and the range of perpetuity growth rates of (10.0%) to 0.0%; (iv) Progenics' net cash; and (v) the number of fully diluted shares of Progenics common stock.

52. With respect to Jefferies' Discounted Cash Flow Analysis ("DCF") of Lantheus, the Registration Statement fails to disclose: (i) the standalone unlevered, after-tax free cash flows that Lantheus Holdings was forecasted to generate during the calendar years ending December 31, 2020 through December 31, 2024 and all underlying line items; (ii) the terminal values of Lantheus; (iii) the individual inputs and assumptions underlying the discount rate range of 7.8%

12

to 8.8% and the range of perpetuity growth rates of 3.5% to 4.5%; (iv) Lantheus' net debt; and (v) the number of fully diluted shares of Lantheus common stock.

53. The valuation methodologies utilized by Jefferies, including the utilization of certain of the non-GAAP financial projections described above by Jefferies, in connection with its valuation analyses is misleading in violation of Regulation 14a-9. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently. Once an S-4 discloses internal projections relied upon by the Board, those projections must be complete and accurate.

54. With respect to Jefferies' Progenics Selected Companies Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Jefferies in the analysis.

55. With respect to Jefferies' Lantheus Selected Companies Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by Jefferies in the analysis.

56. With respect to Jefferies' analyses of premiums paid, the Registration Statement fails to disclose: (i) the transactions observed by Jefferies in the analyses; and (ii) the premiums paid in the transactions.

57. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

58. In addition, to the above omissions and misrepresentations, the Registration Statement fails to disclose other material information crucial to investors seeking to making an informed decision on whether to vote in favor or against the Proposed Transaction.

12

59. The Registration Statement makes certain estimates of the fair value of the share consideration Progenics' shareholders would receive based on a 10% fluctuation in the share price of Lantheus, but does not detail other ranges based on greater fluctuation in the share price of Lantheus, nor does the Registration Statement explain why the assumption of 10% fluctuation was used. In fact, Lantheus shares dropped approximately 20% just on the news of the Proposed transaction on October 2, 2019 -- falling from a close of $24.03 per share on October 1 to a close $19.03 per share on October 2, 2019.

60. Under the heading "Risks Relating to the Merger" the Registration Statement states:

> The market price of shares of Lantheus Holdings common stock has fluctuated since the date of the announcement of the merger agreement and may continue to change through the date of each of the Lantheus Holdings and the Progenics special meetings and the date the merger is completed. For example, based on the range of closing prices of Lantheus Holdings common stock during the period from October 1, 2019, the last full trading day before the public announcement of the merger, through November 8, 2019, the latest practicable trading date before the date of this joint proxy statement/prospectus, the exchange ratio resulted in an implied value of the merger consideration ranging from a high of approximately $5.38 to a low of approximately $4.63 for each share of Progenics common stock. The actual market value of the Lantheus Holdings common stock received by holders of Progenics common stock may result in an implied value of the merger consideration outside this range.

61. The above statement omits setting forth a broader time range for trading in Lantheus shares and thus fails to present Progenics' shareholders with a more complete view showing broader historical ranges for Lantheus share prices necessary for them to make a more informed decision regarding the Proposed Transaction. Clearly a more robust and broader range of both fluctuation in Progenics' share price over a longer time period is required to be disclosed as the value of Progenics' shares have fallen in tandem with a significant drop in the share price of Parent prior to and after announcement of the Merger Transaction. Although the Merger consideration is largely based on a formula reached on June 21, 2019 when Lantheus' Holdings shares were trading

12

at a higher level, (although this ratio was minimally enhanced from that date to present going from an exchange ratio of 0.2477 to 0.2502) the same value present on June 21 is no longer available for Progenics' shareholders, Parent's shares went from a close of $27.85 per share on June 21, 2019 to a share price close of $20.51 on December 5, 2019. Hence, further and broader disclosure is required.

62. The Registration Statement under the heading "Background of the Merger and Certain Other Developments" discusses an interest and discussions by "Party A" in acquiring certain assets of Progenics and the fact that Jeffries contacted Party A in connection with the possibility of Party A acquiring certain assets of Progenics as well as a subsequent statement that Party A "was not interested in pursuing discussions with Progenics regarding such an acquisition" (S-4. at page 88). However, the Registration Statement omitted to disclose whether there had been any discussions between Progenics and Party A or between Jeffries and Party A of an acquisition of Progenics as a whole.

63. Further the Registration Statement contains glaring omissions regarding Velan Capital LP ("Velan"), one of the largest holders of Progenics shares who engaged in a fight for control of the Board. Although nominees of Velan acquired control of the Board on or about November 8, 2019 prior to the date of filing of the S-4, there is a complete absence of any discussion of a relationship between Velan and acquiror Lantheus, if any. Individual Defendants Eric J. Ende David W. Mims Ann L. MacDougall, Gérard Ber and Heinz Mäusli were nominees of Velan. (the "Nominees")

64. Moreover, the Registration Statement under the heading "Background of the Merger and Certain Other Developments" disclosed that:

> Representatives of White & Case then reviewed with the Lantheus Holdings Board disclosure that had been provided by SVB Leerink before the meeting concerning its material relationships and engagements with the Velan Group. The Lantheus Holdings Board

12

> determined that such relationships or engagements would not interfere with the SVB Leerink's abilities to provide financial advisory services to Lantheus Holdings.

65. Although this disclosure indicates that Lantheus' financial advisor SVB Leerink had a prior relationship with Velan and that on April 5, 2019 "representatives of SVB Leerink advised Lantheus Holdings of SVB Leerink's historical and ongoing relationship with Mr. Venkataraman [Velan's Managing Partner] and his affiliated businesses", the nature of this relationship and any facts or detail whatsoever regarding this relationship were not set forth in the S-4 which constitutes a material omission since Velan at the time of the filing of the Registration Statement effectively controlled the Board. In addition, the Registration Statement does not explain when, or if, Progenics was informed of this relationship.

66. There is no mention in the Registration Statement including in "Background of the Merger and Certain Other Developments" of discussions which took place between SVP Leerink and Velan regarding the Merger Transaction which occurred prior to public disclosure of the Merger on October 2, 2019. The fact that these discussions occurred was reported in an October 23, 2019 letter of Progenics to its shareholders"[1] This omission constitutes a material misstatement.

67. The Registration Statement fails to describe how Velan learned of the impending Merger Transaction before it was publicly announced and whether such knowledge impacted Velan's significant trading in Progenics shares prior to the time the Merger Transaction was announced or whether the Velan's Nominees who currently sit on Progenics' Board had prior and improper knowledge of the Merger Transaction and whether they had such knowledge while Velan traded in shares of Progencis. There is a material omission in the Registration Statement which

---

[1] See a copy of a press release containing the October 23 letter online at
https://www.biospace.com/article/releases/progenics-highlights-additional-serious-concerns-about-velan-capital-l-p-/

fails to fully inform investors that Velan had been opposed to the Merger Transaction and had communicated such to Lantheus' financial advisor SVP Leerink on or about August 14, 2019, according to the October 23, 2109 Progenics' letter to shareholders.

68. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger and Certain Other Developments; (ii) Progenics' Reasons for the Merger; Recommendation of the Progenics Board of Directors that Progenics Stockholders Adopt the Merger Agreement; (iii) Opinion of Progenics' Financial Advisor; and (iv) Certain Unaudited Prospective Financial Information.

69. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Progenics

70. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Progenics is liable as the issuer of these statements.

72. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

73. The Individual Defendants were at least negligent in filing the Registration

Statement with these materially false and misleading statements.

74. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

75. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

76. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

77. Because of the false and misleading statements in the Registration Statement, Plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Lantheus

78. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

79. The Individual Defendants and Lantheus acted as controlling persons of Progenics within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Progenics and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

80. Each of the Individual Defendants and Lantheus was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior

12

to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

81. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

82. Lantheus also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

83. By virtue of the foregoing, the Individual Defendants and Lantheus violated Section 20(a) of the 1934 Act.

84. As set forth above, the Individual Defendants and Lantheus had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that Defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: December 09, 2019

Respectfully submitted,

By: *(signature)*
Howard T. Longman
**STULL, STULL & BRODY**
354 Eisenhower Parkway, Suite 1800
Livingston, New Jersey 07039
Tel: 973 994 2315
Fax: 973 994 2319
Email: hlongman@ssbny.com

Melissa R. Emert (*pro hac vice forthcoming*)
**STULL, STULL & BRODY**
6 East 45th Street
New York, NY 10017
Tel: 954-341-5561
Fax: 954-341-5531
Email: memert@ssbny.com

*Attorneys for Plaintiff*